METROPOLITAN TOBACCO CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 15664. Promulgated May 13, 1929.

*W. W. Spalding, Esq.,* for the petitioner.
*L. A. Luce, Esq.,* for the respondent.

526

OPINION.

PHILLIPS: Petitioner contends that it is entitled to include in invested capital for the year 1921 the prorated amount of $274,636.83, representing $278,460 par value of the deferred payments on the capital stock subscribed for by its employees on or about February 1, 1921. The respondent has included in petitioner's invested capital for 1921 the initial cash payments of $293,740 made by the employees of petitioner on the subscription price of the stock, at the time the stock was issued, in the prorated amount of $248,966.36, and has disallowed the inclusion of the balance represented by deferred payments.

Section 326 (a) of the Revenue Act of 1921 provides that the term "invested capital" for any year means, among other things, "(1) actual cash bona fide paid in for stock or shares"; "(2) actual cash value of tangible property other than cash bona fide paid in for stock or shares, at the time of such payment * * *."

Section 325 (a) defines the term "tangible property" to mean stocks, bonds, notes, and other evidences of indebtedness, bills and accounts receivable, leaseholds, and other property other than the "intangible property."

The petitioner contends that the contracts under which the employees agreed to pay the balance of the purchase price of stock issued to them were "tangible property" and were "evidences of indebtedness" within the meaning of section 325 (a) of the Revenue

Act of 1921, and should be included in invested capital at their cash value at the time they were executed. It further contends that said contracts were " paid in " for the shares of stock issued by it.

The respondent contends that the instruments in question are not evidences of indebtedness received in payment for the stock but that they are in effect subscription agreements. He relies upon our decision in *Northwestern Cabinet Co.*, 13 B. T. A. 533. We are of the opinion that the two cases are not similar. There the agreement was one to purchase. Here the sale was completed and the instrument in question evidenced an indebtedness for stock issued. The agreement contains no provision for voting the stock, and in this situation the purchaser, being the owner of record on the books of the corporation, was entitled to vote the stock at stockholders' meetings. The agreement provides for a number of conditions under which petitioner is given the option to repurchase the stock, but it is an enforcible agreement against the purchaser in case the right of repurchase is not exercised by petitioner.

There is no question of the bona fides of the transaction. Under such circumstances, we are of the opinion that the agreements were " evidences of indebtedness " within the meaning of the Revenue Act of 1921 and that they were paid in for stock which was actually issued. In this situation they may be included in invested capital at their actual cash value at the time paid in. *Haskell & Barker Car Co.*, 9 B. T. A. 1087; affd. C. C. A., 7th Cir., not yet reported; *Fidelity Trust Co.*, 13 B. T. A. 109.

The actual cash value to be included in invested capital is the value of the property received in exchange for the stock. We must therefore value these obligations at their actual cash value when received by petitioner. How much cash or property did petitioner receive from the purchasers of its stock? In determining this value we must consider the actual cash value of the note itself; its cash value in the market if offered without the stock in payment for which it was given, and without recourse against the petitioner, for only by this means may we determine the extent to which additional assets have been risked in the business of the petitioner. *Columbus Canning Co.*, 10 B. T. A. 1085; *Doernbecher Mfg. Co.*, 11 B. T. A. 248.

The only testimony as to the value of the notes is that of two officers of the bank with which petitioner did business. Neither had ever purchased or sold such obligations as these. Their business was to make loans and to value the assets and collateral back of such loans. When asked to state their opinion of the actual cash value of these obligations their answer was that these instruments had a value of from 80 to 100 per cent of their face amount. We are of the opinion that when their testimony is considered as a whole it goes no further than to establish that as bank officers

they would have been willing to accept these instruments as collateral for a loan to petitioner of 80 per cent of their face amount. They expressly negative any idea that their bank could have purchased these instruments. The value expressed by them seems to give consideration to the borrowing capacity of the petitioner. They were familiar with the financial condition of the petitioner, but they had none of the information which would have permitted them to determine the financial responsibility of the respective obligors. Nor, indeed, does it appear that they knew who the obligors were, except that they had been in the employ of the petitioner for some time. We are unable to accept this testimony as establishing the actual cash value of the instruments in question at the time they were received by the petitioner.

Reviewed by the Board.

*Decision will be entered for the respondent.*